CAROLYN GOODE CHARLTON

V.

CRADDOCK-TERRY SHOE CORPORATION

Record No. 860106

June 10, 1988

Present: All the Justices

*Leslie E. Allen, III (William P. Harris; Harris and Black*, on brief), for appellant.

*John T. Cook (S. J. Thompson, Jr.; Caskie, Frost, Hobbs, Thompson, Knakal & Alford*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

Carolyn Goode Charlton filed a motion for judgment against her former employer, Craddock-Terry Shoe Corporation. Invoking the provisions of Code § 65.1-40.1 (Cum. Supp. 1985),[1] the plaintiff alleged that the defendant had discharged her because she "had incurred a work-related injury or disease for which she in-

---

[1] At the time the motion was filed, the statute read as follows:

§ **65.1-40.1. Discharge of employee for exercising rights prohibited; civil action; relief.** — A. No employer or person shall discharge an employee solely because the employee (i) has incurred a work-related injury for which he intends to file or has filed a claim under this Act or (ii) has testified or is about to testify in any proceeding under this Act. The discharge of a person who has filed a fraudulent claim is not a violation of this section.

B. The employee may bring an action in a circuit court having jurisdiction over the employer or person who allegedly discharged the employee in violation of this section. The court shall have jurisdiction, for cause shown, to restrain violations and order appropriate relief, including actual damages and attorney's fees to successful claimants and the rehiring or reinstatement of the employee, with back pay plus interest at an annual rate not to exceed eight percent.

This statute was amended by Acts 1986, c. 259.

tended to file a claim" under the Virginia Workers' Compensation Act.

The parties agreed "that the jury would decide the issue of liability and the Court would determine damages if necessary." At the conclusion of the evidence, the trial court instructed the jury in the language of the statute, and the jury returned a verdict in favor of the plaintiff. The trial court entered an order overruling the defendant's motion to set the verdict aside and taking the case under advisement to consider the quantum of damages.

Later, the court reversed its initial ruling and entered judgment for the defendant. Accordingly, we must review the evidence underlying the jury's verdict, and we do so in the light most favorable to the plaintiff. The defendant employed the plaintiff in 1977. As the result of repetitive hand manipulation involved in the performance of her assigned duties, she developed tendonitis in her right wrist and hand in September 1982. The Industrial Commission granted her an award of benefits for lost wages and the costs of medical treatment. On September 13, 1984, the plaintiff was required to leave her work station and seek treatment for pain in her right hand at the emergency room of a local hospital.

The defendant's several witnesses testified, contrary to the plaintiff's recollection at trial, that she did not return to work until September 24. In a meeting to which she was summoned the next day, the plaintiff was asked to sign a document which provided, "Pursuant to the provisions of Sec. 65.1-53,[2] the undersigned hereby waives the right to claim compensation benefits covering the following physical conditions: Tendonitis of right wrist". Defense witnesses testified that they told the plaintiff repeatedly that

---

[2]     § 65.1-53. Waiver. — When an employee or prospective employee, though not incapacitated for work, is found to be affected by, or susceptible to, a specific occupational disease he may, subject to the approval of the Industrial Commission, be permitted to waive in writing compensation for any aggravation of his condition that may result from his working or continuing to work in the same or similar occupation for the same employer. The Industrial Commission shall approve a waiver for coal worker's pneumoconiosis and silicosis only when presented with X-ray evidence from a physician qualified in the opinion of the Industrial Commission to make the determination and which demonstrates a positive diagnosis of the pneumoconiosis or the existence of a lung condition which makes the employee or prospective employee significantly more susceptible to the pneumoconiosis.

In considering approval of a waiver, the Commission may supply any medical evidence to a disinterested physician for his opinion as to whether the employee is affected by the disease or has the preexisting condition.

the waiver applied only to future disability claims and not to any claim she might assert on account of the condition she suffered on September 13, 1984. The plaintiff, who remained eligible for medical benefits under the 1982 award, declined to sign the document. She testified that she refused because she "did not understand what the waiver meant." The defendant's assistant personnel director agreed that "she seemed to be not really certain as to what it was we were trying to explain".

In a letter dated October 16, 1984, the defendant informed the plaintiff that, if she persisted in her refusal to sign the waiver document, "a termination will take effect as of October 19, 1984." The plaintiff decided to sign the form, and she delivered it to her employer on that date. The defendant then mailed the form for approval to the Industrial Commission. The defendant's assistant plant manager testified that the plaintiff was terminated "right at the 25th of October." In a letter dated October 29 addressed to the Industrial Commission, the plaintiff's attorney withdrew the waiver, and the Commission advised the defendant by letter dated October 31 that "we are not approving this waiver."

By letter dated November 5, 1984, the plaintiff's counsel filed with the Commission the appellant's application for a hearing on her claim for workers' compensation benefits. In a letter response, the Commission advised that the plaintiff's claim "for time loss [sic] from work" was time-barred but that she "has been awarded authorized medical treatment for as long as necessary."

After reviewing a transcript of the evidence, the trial court addressed a letter opinion to counsel for the parties. During the course of cross-examination, the plaintiff had given the following testimony:

Q. You were not terminated by Craddock-Terry because you had made a claim, were you?
A. I don't know. I guess not.
 . . . .
Q. You were terminated because you refused to sign that waiver, isn't that right?
A. Yes.

■ The trial court, referring in his letter to this excerpt from the transcript, concluded that "the plaintiff's own testimony reveals that she was not discharged 'solely because she had in-

curred a work related injury for which she intended to file or had filed a claim,' or because she had 'testified or was about to testify in any proceeding under the Workman's Compensation Act.' " Citing *Massie* v. *Firmstone*, 134 Va. 450, 114 S.E. 652 (1922), the court said that "[t]he plaintiff's case can rise no higher than her own uncontradicted testimony" and ruled that "the jury verdict must be set aside". By final order incorporating "the reasons stated in the . . . opinion letter", the trial judge set the verdict aside and entered final judgment for the defendant. We granted the plaintiff an appeal.

█ In defense of the trial court's ruling, the defendant argues on brief that "[t]he Plaintiff's testimony that she was discharged because she failed to sign the waiver negated the applicability of Section 65.1-40.1 and under the doctrine of the case of *Massie* v. *Firmstone* . . . she is bound by the statements of fact and the natural inferences therefrom." As we said in *Baines* v. *Parker and Gladding*, 217 Va. 100, 104, 225 S.E.2d 403, 406-07 (1976), the *Massie* doctrine, first defined in 1922, "applies only to 'statements of fact' made by the litigant, to statements of facts 'within his own knowledge', and to 'the necessary inferences therefrom'." The doctrine since has been conditioned and restricted in numerous opinions, *see Travis & Ludwig* v. *Bulifant*, 226 Va. 1, 4-5, 306 S.E.2d 865, 866-67 (1983), but it never has been expanded to apply to expressions of opinion based on facts beyond the realm of the party's knowledge, *Yates* v. *Potts*, 210 Va. 636, 639, 172 S.E.2d 784, 787 (1970); *Saunders and Rittenhouse* v. *Bulluck*, 208 Va. 551, 553, 159 S.E.2d 820, 823 (1968).

█ The testimony underlying the trial court's ruling, given by the plaintiff during cross-examination in response to leading questions, was ambivalent. Although she acquiesced in the suggestion that her refusal to sign the waiver document was the reason she was discharged, her answer to the earlier question shows that she simply did not know what reason prompted the defendant's decision to fire her. Her employer's innermost motivation was a matter necessarily outside the realm of her knowledge.

> If, when the party's testimony is taken in its entirety it does not clearly and unequivocally appear that his case is without merit, or if the minds of reasonable men would differ as to the effect of his testimony, he has not fatally damaged his case. In such circumstances, the jury must be permitted

to pass upon the testimony and the effect thereof, taken together with all the other evidence in the case.

*VEPCO* v. *Mabin*, 203 Va. 490, 494, 125 S.E.2d 145, 148 (1962) (citations omitted); *see also Seven-Up Bottling Co.* v. *Moseley*, 230 Va. 245, 249, 335 S.E.2d 272, 274-75 (1985).

■ We think the evidence in this case justifies the jury's conclusion that the reason the defendant discharged the plaintiff was one proscribed by Code § 65.1-40.1. The inference raised by the sequence of events contradicts the defendant's argument that the plaintiff "was . . . terminated for not signing the waiver and returning to work." The defendant's own witnesses testified that the plaintiff returned to work on September 24, 1984 and that she was handed the waiver document at the meeting on September 25. The plaintiff signed the document and delivered it to her employer on October 19. The waiver was not disapproved by the Industrial Commission until October 31. The uncontradicted testimony is that the defendant had fired the plaintiff "right at the 25th of October", four days before the plaintiff's attorney had withdrawn the waiver and six days before the Commission had acted on it.

■ We hold that the plaintiff's testimony was not fatal to her claim and that the other evidence in her case was sufficient to support the verdict rendered by the jury. We will reverse the final judgment, reinstate the jury's verdict, and remand the case for further proceedings on the plaintiff's motion for judgment.

*Reversed and remanded.*